*Decision will be entered under Rule 62 (c).*

MARTIN CANTINE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16797.   Promulgated February 12, 1930.

*J. Marvin Haynes, Esq.*, and *William Diebold, Esq.*, for the petitioner.

*Paul L. Peyton, Esq.*, for the respondent.

1114

## OPINION.

ARUNDELL: The first and principal contention of the petitioner is that he realized no taxable gain through the credit of $201,101.30 to his account because this sum did not exceed the March 1, 1913, value of his agreement with the corporation whereby he was to be compensated for patents assigned to it.

The facts may be briefly restated as follows: Prior to March 1, 1913, petitioner delivered to the Martin Cantine Co. certain patents, some of which he had obtained by assignment from the patentee and others were patents issued to him. The delivery was made with the understanding that he was to be compensated for them at such time as their value was demonstrated. Thereafter petitioner withdrew from the corporation amounts in excess of his salary and dividends and on September 30, 1921, the debit balance of his account stood at $201,101.30. By rdesolution of the corporate trustees in October,

which was confirmed by the stockholders, petitioner's account was cleared by charging said debit balance to the corporate surplus account.

Counsel for the respondent argues that the $201,101.30 was received by petitioner as compensation for services and for other intangibles in addition to the patents. The minutes of the meeting of the trustees on October 15, 1921, referred to certain intangibles which petitioner had created and turned in to the company, but the testimony of all three of the trustees is quite specific that the $201,-101.30 was understood and intended by all the parties to be compensation for the patents turned in by the petitioner. We are satisfied from the evidence that the credit was in fulfillment of the agreement to pay petitioner for the patents.

The conversion into cash or other property after March 1, 1913, of property acquired before that date results in taxable income to the extent that the amount realized exceeds cost or March 1, 1913, value, whichever is greater. *Walsh* v. *Brewster*, 255 U. S. 536; *Platt* v. *Bowers*, 13 Fed. (2d) 951; *Ruth Iron Co.*, 4 B. T. A. 1151; afld., 26 Fed. (2d) 30. In this case petitioner's property was his contract with the Martin Cantine Co., under which he was to be paid for the patents. His cost was the cost of the patents, which was about $10,000. The question to be determined then is the March 1, 1913, value of the contract.

The evidence established a March 1, 1913, value of the patents of $600,000. We have reached the conclusion that this amount was their value upon consideration of the testimony of witnesses who at March 1, 1913, were either in the paper-coating business or in the business of manufacturing paper-coating machinery. They were familiar with the machines manufactured under the Noyes and Cantine patents and knew of the superiority of those machines over others then in use. The petitioner, of course, did not own the patents at March 1, 1913, but it was upon the worth of those patents, not only at that date but before and after it, that his compensation was to be based. The petitioner himself, who has been in the paper business since 1884, testified that in his opinion the value of the contract right was equal to that of the patents. His valuation of the patents was somewhat higher than the amount we have found. Two other witnesses gave it as their opinion that the value of the contract was somewhat less than that of the patents. Upon objection of counsel for the respondent as to their qualifications, these two witnesses were not permitted to express their opinions as to the value of the contract. The difficulty of producing evidence of the exact value of the contract is obvious. Here we have a contract which plainly is out of the ordinary run of contracts and of a kind which

is not customarily dealt in as is other property, for example, real estate, patents, or leases. There probably are no experts in the valuation of such property. If there are any sales of property of this kind they are few and far between. We can not expect a degree of proof beyond what is reasonably possible. The further we leave March 1, 1913, behind, the more difficult it is to get competent evidence as to that date, even in cases where all the factors going into such value were in existence on that date. To say that no one is competent to testify to the value due to the uncertain factors of the future and that, consequently, we will find no value, is to shirk a duty that we believe Congress expects us to perform and which is necessary if the law is to be reasonably carried out. In reaching our conclusion that the contract had a March 1, 1913, value of not less than $201,101.30, we have taken into consideration the value of the patents themselves, for, as pointed out above, it was upon their value that the amount to be paid petitioner was dependent. We have also considered the earnings of the corporation both before and after March 1, 1913. It is a rather striking fact that from 1904 (when the first Noyes machine was installed) to 1912 the Cantine Co.'s net operating profit increased from $25,000 to $144,000, or nearly six times, and its net tangible assets increased only about three and one-half times in the same period. From 1913 to 1920 the company's net income increased over three times. Net income in 1920 was more than twenty-two times the net operating profit in 1904. Considering all the facts before us, we conclude that the petitioner's contract with Martin Cantine Co. was worth on March 1, 1913, not less than the amount for which his account was credited in 1921, and that he realized no taxable gain on the transaction here involved.

Alternative claims of petitioner are: (a) That if the amount credited to his account was for additional compensation for services as claimed by the respondent, then the corporation's act was null and void because of want of authority and the credit could not be treated as income, and (b) that in any event only the amount of $31,447.80 actually paid to him in 1921 was income in that year.

In view of our disposition of the principal issue, these alternative claims do not require decision.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

STERNHAGEN, concurring: While I am willing to go along with the 1913 valuation of petitioner's contract right to compensation at no less than the amount claimed, I can not accept the valuation of

the patents at $600,000. But, right or wrong, there is no necessity for fixing the precise value of the patents, so long as their value is probably sufficient to support the value claimed for petitioner's right. The Board should not go beyond the necessity of the case.

McMAHON agrees with this opinion.

———

MURDOCK, dissenting: I can not agree with the decision in this case, which holds that the contract, as distinguished from the patents, had a value on March 1, 1913, of not less than $201,101.30. In my opinion there is no satisfactory evidence as to the petitioner's prospects on March 1, 1913, in regard to the amount which he would ultimately receive and the time when he would receive it. Placing myself back at March 1, 1913, and considering all of the evidence which was presented to me, I am at a loss to say what was the value of the petitioner's contract on that date. It does not appear that the petitioner could have called for a settlement under his contract on that date nor does it appear on what date thereafter he at that time could have expected a settlement. The amount which he could have expected is equally uncertain, but even if I were to make some guess as to the amount which he would ultimately receive, I have no basis on which to discount that amount to arrive at its value on March 1, 1913.

Although it is not essential to the decision of this case to find that the patents had a value on March 1, 1913, of $600,000, nevertheless, I want to point out that I do not agree that the evidence shows this amount to have been the fair market value of the patents on that date. The petitioner stated, that in his opinion, the value of the patents was between $900,000 and $1,000,000 at March 1, 1913, but the evidence failed to disclose that he had any basis for this statement. Another witness placed the value of the patents at $772,000, but his testimony discloses that his opinion was entitled to no weight whatever. Another witness explained why, in his opinion, the patents were worth $600,000, and his testimony is far more convincing than that of any other of the witnesses in this regard. However, in valuing the patents, he attributed to the patents, earnings which, in my opinion, were attributable in part at least to other factors, such as efficient management, good will, valuable trade-marks or trade brands, valuable processes and formulae, and valuable contracts used by the company.